UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re ) | |
| ) | |
| LINDA NABAVI and ) | Case No. 6:12-bk-03822-KSJ |
| MICHAEL NABAVI, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| ) | |

# MEMORANDUM OPINION GRANTING
# DEBTORS' AMENDED MOTION FOR ATTORNEY FEES

The Debtors, Linda and Michael Nabavi, seek recovery of $15,925 in attorney fees they incurred in defending a motion to dismiss their bankruptcy case filed by Centennial Bank.[1] The Debtors base their request on Fla. Stat. § 57.105 and the terms of the Second Real Estate Mortgage and Security Agreement dated November 7, 2007 ("Mortgage") that secured a loan to Nabavi Development and Construction, Inc., the Debtors' construction company ("Note").[2] Centennial Bank opposes the Debtors' request, arguing they cannot rely on the terms of the Mortgage because the property securing the note was foreclosed upon in 2010, so the contractual fee provision was no longer in effect when the Bank's motion to dismiss was litigated in 2012.[3] Rejecting the Bank's argument, the Court will grant the motion and award the Debtors the requested fees.

On March 23, 2012, the Debtors filed this Chapter 7 case and listed Centennial Bank in Schedule F as a creditor holding an unsecured non-priority claim for $1.8 million. The debt

---

[1] Doc. No. 98; Exh. 2. The Debtors employed an expert witness who testified at the hearing on their motion for attorney fees held on March 7, 2013. Debtors do not seek payment of the expert's fees as costs. In his closing argument, the Debtor's lead counsel limited their request to $15,925, which is supported by attorney time records attached to Exhibit 2.

[2] The Debtors were personal guarantors of the underlying business loan. Centennial is successor in interest to Old Southern Bank, the original lender and mortgagee.

[3] Doc. No. 106.

arises from a deficiency judgment entered against the Debtors individually after the lender foreclosed on the underlying commercial real property.

Centennial Bank actively participated in this bankruptcy case from the outset. It filed an unsecured deficiency claim for $1,794,151.91.[4] Its counsel filed a notice of appearance[5]; a motion for an extension of time to file a motion to dismiss the case[6]; and a motion for 2004 examinations of the Debtors[7], which were granted[8]. Indeed, Centennial Bank's examination of Ms. Nabavi lasted more than five hours.

On August 31, 2012, Centennial Bank filed its motion to dismiss the case and specifically demanded attorney fees from the Debtors.[9] The Debtors opposed the motion and responded with a request for their own fees.[10] Centennial pursued its motion zealously, serving extensive discovery on the Debtors and third parties and prosecuting a motion to compel production of documents[11] from the Debtors.

After conducting a five-and-a-half-hour evidentiary hearing on Centennial Bank's motion to dismiss, I found no bad faith on the part of the Debtors and denied Centennial's motions to dismiss and to compel.[12] Centennial did not appeal.

The Debtors then sought payment of attorney fees incurred defending the motion to dismiss. They rely on Fla. Stat. § 57.105, which states in pertinent part:

> If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.[13]

---

[4] Claim No. 1-3.
[5] Doc. No. 13.
[6] Doc. No. 25.
[7] Doc. No. 32.
[8] Doc. Nos. 37 and 39.
[9] Doc. No. 49.
[10] Doc. Nos. 57 and 58.
[11] Doc. No. 83.
[12] Doc. Nos. 83 and 89.
[13] Fla. Stat. § 57.105(7).

The relevant attorney fees provision in the Mortgage states:

> If any action or proceeding is commenced to which bank is made or chooses to become a party by reason of the execution of the Note, this Mortgage, any loan documents or the existence of any Obligations or in which Bank deems it necessary to appear or answer in order to protect its interests, Mortgagor agrees to pay and to hold Bank harmless for all liabilities, costs and expenses paid or incurred by Bank in such action or proceeding, including but not limited to reasonable attorneys' fees, paralegal fees, court costs and all other damages and expenses.[14]

Centennial Bank argues the Debtors cannot rely on this provision in the Mortgage because the Bank foreclosed on the collateral prior to the Debtors' bankruptcy; and the Mortgage was not enforceable when this bankruptcy case was filed.

Centennial Bank overlooks the fact that the language regarding fees and costs in the Mortgage is not limited to actions taken before foreclosure. Indeed, the Mortgage contemplates other actions and proceedings, some of which may be post-foreclosure, and clearly states such actions will be governed by the Mortgage's fee and cost provisions. The attorney fee provisions apply to "any action by Bank for collection of the Obligations . . ."[15] and "any action or proceeding . . . to which bank is made or chooses to become a party by reason of the execution of the Note, this Mortgage, any loan documents or the existence of any Obligations or in which Bank deems it necessary to appear . . . in order to protect its interests."[16]

Centennial Bank's participation in this bankruptcy case clearly was an effort to collect upon the Debtors' loan obligations arising from the Note associated with the Mortgage. The only reason Centennial Bank sought to dismiss the bankruptcy case was to prevent the Debtors from discharging the deficiency judgment due it. The prosecution of the motion to dismiss, unquestionably, was an action by the Bank for collection of the Debtors' obligations under the Note. It was also a proceeding to which the Bank voluntarily chose to become a party by reason of the existence of the Note and related loan documents in order to protect its interests.

---

[14] Exh. 1 at 6, ¶ 21.
[15] Exh. 1 at 6, ¶ 19.
[16] Exh. 1 at 6, ¶ 21.

If Centennial Bank had been successful on its motion to dismiss, it would have been entitled to fees and costs pursuant to Paragraph 21 of the Mortgage. The same rule applies to the Debtors who successfully defended the motion to dismiss. The Debtors, as prevailing parties, are entitled to recover from Centennial Bank reasonable attorney fees pursuant to the Mortgage and Fla. Stat. § 57.105.

The Eleventh Circuit Court of Appeals has adopted the lodestar method to determine the reasonableness of fees charged by professionals.[17] Under the lodestar method, courts multiply the reasonable hourly rate for services rendered by the number of hours reasonably expended on the matter. After calculating the reasonable fee, a court may consider other factors to adjust the fee award upward or downward.[18] These factors are set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[19]

Applying the lodestar analysis, the fees sought by the Debtors are reasonable. Their success in defending the motion to dismiss allows them to discharge significant unsecured debt, including their obligation to Centennial, gives them a chance at a fresh start. The hourly rates charged by counsel ($400/hour for David Borack, an experienced attorney, and $200/hour for less experienced associate attorneys) are reasonable for the services rendered. The Debtors' attorneys spent 45.6 hours performing legal services to defend the motion to dismiss. The total fee for these services is $15,925. None of the other lodestar factors merit any addition or reduction to the fee.

---

[17] *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988).

[18] *In re Howell*, 226 B.R. 279, 281 (Bankr. M.D. Fla. 1998).

[19] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Accordingly, the Debtors' Motion for Attorney Fees[20] is granted. A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on May 20, 2013.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

---

[20] Doc. No. 58.